Good morning, Your Honors, and may it please the Court, Anita Candela for Mr. Holmes. I'd like to reserve three minutes for rebuttal. Joel Holmes was subject to a no-contact order that prohibited not just willful contact but any contact with the parties protected by the order. The order therefore placed unlimited restrictions on his movement, and thus he was in custody for the purposes of habeas corpus jurisdiction. This Court should reverse the District Court's order dismissing his petition and remand for an adjudication on the merits. Can you explain, Counsel, why you construe it as not requiring or why the understanding under Washington law would be that there was no intention or willfulness aspect to it? You cite the domestic relations case, and there they seem to put a gloss, at least for the domestic relations no-contact orders, of having to make it knowing contact, a willfulness aspect. And the language of the order, the harassment order, says a violation, excuse me, I'm looking at 9A.46.080, order restricting contact in the harassment situation. It says willful violation of a court order issued under this section or of an equivalent local ordinance is a gross misdemeanor. That's the same language that's in the domestic relations statute. And I'm just wondering why your assumption is that Washington law wouldn't require the equivalent willfulness in your client's case. Well, first, referring to the Washington law and the statutes that you started, both of those statutes actually have a mens rea element within them. The no-contact order that Mr. Holmes is subject to is not issued pursuant to either of those statutes. It is a condition of his sentence. And the language of that no-contact order, as Your Honor would know, just says no contact with these individuals. It doesn't include a mens rea element at all. And then when we looked at the Washington State Supreme Court decision in McCormick, where the individual is subject to a similar condition, it's not identical, but his condition is that he may not frequent areas where minors would be present. And the state argues that he's violated that condition. And he says to the court, well, the state should have to prove that it was a knowing or willful violation. And the Washington Supreme Court held that that was not true, that the language of the condition didn't require that it be shown that the defendant acted knowing or willfully. Just the fact of being in the area was sufficient. So although he was a wheelchair-bound man who was at a food bank in a church, that was still enough for him to be found in violation of the order. The no-contact order here has no mens rea requirement. And so Mr. Holmes is subject to incarceration at any point for violating it. Unlike in other cases where the court has found that his jurisdiction was not appropriate, he can't make a choice to avoid incarceration here. If he leaves his house and he has contact with these individuals, if he sees them, that under Washington law would be sufficient. The record also indicates that Mr. Holmes's address is very near the University of Washington. And I can give you a site. It's at document five in the district court record. At page seven, it lists his address. If you look his address up on Google Maps, you see that he's just blocks away from the university. And so the chances of inadvertent contact are not low for him. What is your best case, you think, under Washington law, if there is one, that would suggest that if a person is under a no-contact order and then runs into a happenstance, runs into the person in the order at some public place like Seattle Center or Key Arena or someplace else, that they will be held to be in violation of the no-contact order? I think State v. McCormick, which is cited in the briefs, is the case that I would say most strongly indicates that because the court's holding there really is that the government state does not have to prove mens rea. They just have to prove that you were there, and that's enough. And I want to emphasize again that this no-contact order is not like other no-contact orders and that it's not issued pursuant to 1099 or 9A46080. It is a condition of sentence, and it just says no contact with these victims. And that is very similar to the condition that the defendant in McCormick was under, which said that you cannot frequent these areas. It didn't have a mens rea element, and the court refused to read one in. And what was the condition again in that case? The individual could not frequent areas where minor children were known to congregate. And the court did not have it that the State didn't have to show that he knew or should have known that minors would be in the area, just the fact of being there was sufficient. So what does contact mean in this context, though? I think contact can mean inadvertent or intentional contact, being present, being in the same place. To sort of have a face-to-face encounter? You have to acknowledge one another? I don't even think it requires acknowledgment of one another. I think if a victim were to see Mr. Holmes, there would be an argument that he had violated the no-contact order by being in the same place. Walking down the street and Holmes doesn't see the other person, but the contactee sees Holmes. I think that would be sufficient because there's no mens rea there. That's a violation? And that is why Mr. Holmes' movement is incredibly restricted by the no-contact order. Mr. Holmes gets on the monorail, let's say, and after he walks in, he sees one of the university officials in the no-contact order sitting on a bench. He doesn't talk to them. Your position is that would be a contact that would violate the order?  Counsel, you keep characterizing this as extremely restrictive. I'm just puzzled. This was challenged, or this habeas petition was challenged, what, two days before the no-contact order was due to expire?  I believe that is correct. And then there was no prior challenge to this, and then you didn't even raise it in your opening brief. You raised it as part of the reply brief, didn't you? No, I mean, I think the issue that the court appointed us on was whether there's no contact or a constituted custody for the purposes of habeas jurisdiction, and that has been what we've been briefing. I'm sorry, maybe not understanding the court's question. Well, you know, your argument that this is highly restrictive seems sort of after the fact. Go ahead. I'd also just like to draw the court's attention to language that you employed in Williamson v. Gregoire, where the court said, a substantial disincentive to movement might be so severe as to create custody for habeas purposes. Here, there is a very substantial disincentive to movement because Mr. Holmes faces incarceration at any point. And in Williamson, the court really focused its inquiry regarding whether someone met the jurisdictional requirement for habeas on this issue of movement. And Mr. Holmes' movement is severely restricted because he does face incarceration at any time. Okay, Ms. Condoleezza, would you like to hold some time for that? I would like to reserve the remainder of my time for that. Thank you very much. So we'll hear from Ms. Meckling, and I don't know about the other judges, but it would help for me to hear from you what your view is of Washington precedent that would bear on whether the kinds of context we've described, running into someone on the monorail or at Seattle Center, you know, would violate this order. Certainly, Your Honor. Good morning, and may it please the Court. Amy Meckling appearing on behalf of Daniel Satterberg. The respondent in this matter. I'm asking this Court to determine that a provision of a petitioner's judgment and sentence that prohibits contact with the victim of his crime is neither a severe nor immediate restraint that would subject a person to being in custody for purposes of habeas jurisdiction. And I believe that is true regardless of whether the no-contact provision requires willful contact or not willful contact, and let me explain that. The mere speculative chance in the future of incarceration this Court has held is not sufficient to render a person in custody for purposes of habeas jurisdiction. It's not the type of severe present restraint on the person's liberty that the extraordinary writ is designed to remedy. This Court has stated in Edmonds v. Wan-Bai-Cheng that until confinement is imminent, the special urgency is just not there. It's absent. And in that case, an attorney who actually faced a pending contempt proceeding for failure to pay a fine, the proceeding was actually a hearing date had been scheduled, is my understanding, and then it was stayed. He actually faced a hearing where he could be incarcerated for not paying the fine. That was held not to be a sufficient restraint because the hearing was not sufficient. Could you address, counsel, how about addressing the question that Judge Gould posed at the outset? That gives you a signal as to what the panel is most interested in. And I'm just sort of prefacing the law to get there, and I'm certainly going to answer that. Because there's any future number of considerations that can happen at a hearing on a violation, whether it be willful or not willful, because there's discretion, the court doesn't have to pose incarceration, then it's not a restraint. In this particular case, the Washington law does not require a sentencing violation to be willful, with the exception of failure to pay monetary obligations. The state does not have to prove willfulness. However, I don't think that any court is going to construe the term contact to include conduct as the petitioner is alleging, walking down the street and passing by one of the victims of his crime. That's not going to be included in the definition of contact. Contact implies some form of meeting, communication, or contact. Touching. Yes. I suppose if Mr. Holmes walked up to the victim after he saw him sitting on the bus or on the monorail and spoke to him, well, that's certainly intentional, willful contact. If he just sat on the other side of the monorail and didn't have any interaction with him, I'm not sure how the state could possibly prove a violation of his sentence. What if they made eye contact? Common phrase, eye contact. We made eye contact across a crowded room. I don't think eye contact alone would be sufficient. If Mr. Holmes glared in a menacing manner, I think I might have a different answer. If he just looked at the victim, they saw each other, and then they looked away, no, that's not contact. And under state law, this is very important, and my brief doesn't really address this. Under state law, a trial court has wide discretion to either find a violation in the first instance, and if a violation is found, what the sanction may or may not be. Courts routinely do not find violations. And even if they do, they routinely do not impose any sanction whatsoever. In 13 years as a prosecutor in King County, I have never seen anyone sent to jail for walking past a victim on the street or sitting on the same bus as a victim. And if the state tried to charge such conduct or tried to bring such conduct in the context of a sentencing violation hearing, I think a judge would probably laugh it out of the courtroom. Let me ask you this. This particular condition was not a condition of probation, right? He was never on probation. He was never placed on probation. He was never placed on any form of supervision. And I think this is also important. Not only was he not on any sort of probation by the state or by a county department of corrections or whatnot, he was never on any sort of court supervision. The court wasn't even monitoring that. So how does the state, how would the state initiate some sort of proceeding to enforce this particular provision of his sentence? Well, first the state would have to become aware of it. So I'm not sure how the court or the state would become aware of it. But the law allows that if either the court on its own motion or the state feels that a violation of sentence has occurred, you can schedule what's called a show cause motion and bring the defendant before the court to show cause why he has not violated the sentence. And if, and this is under 994-6333, and if the court finds that he has violated the sentence, then it's completely within the court's discretion to impose a sanction or not, or what kind of a sanction to impose. The most incarceration that a person can get is 60 days per violation. Routinely courts either find violations, don't issue any sanction, don't find a violation. I mean, I can't imagine Mr. Holmes being placed in jail for just accidental behavior. Well, I, just to offer a perspective as one judge, I have no question in my mind that Mr. Holmes wanted to go to the superior court and get a judge to clarify, to modify the sentencing order to clarify that he could, you know, go to these public places and not fear a violation by unintentionally encountering someone. I would think he could get that relief. But he's not in that court asking for that relief. He wants to get a review on his habeas petition. And so he's arguing it's a sufficient restraint to be custody. So I guess where we are is looking at what are the precedents of what contact means. And that's sort of where I started my argument. This court has held that a speculative threat of future incarceration is simply not sufficient restraint to warrant an in-custody status for purposes of jurisdiction. It needs to be a severe restraint on personal liberty. Which case do you rely on? As I was citing earlier, Edmonds v. Wan-Bae Ching out of this circuit says that until confinement is eminent, the special urgency justifying resort to the habeas corpus remedy is absent. And that's a situation where the attorney actually faced a hearing where he could be incarcerated because he had failed to pay a fine. And because incarceration was only one of a number of possible outcomes of that hearing, the court found that that was insufficient. And also in Dremen v. Francis out of this circuit, the court concluded that a choice on behalf of the petitioner to refrain from conduct that could result in his incarceration was also rendered custody highly speculative. Here it is the state's position that it is completely within Mr. Holmes' choice to avoid contact with the victims and therefore avoid incarceration. But even if you consider the petitioner's argument that willful or non-willful conduct is sufficient, it becomes even more speculative because, again, the court has wide discretion to actually impose a sanction or what kind of a sanction to impose. And I also- Counsel? Yes. Just to clarify, do I understand then your argument is that as a sentencing or as a judgment, part of his judgment, that if one of the victims had had a chance encounter with Mr. Holmes and felt that he had violated the no contact proviso, that the mere fact that it was non-willful would not be a defense by Mr. Holmes? That the judge might laugh it out of court for other reasons, but it is not a condition of the no contact order that it be willful. Is that correct? Well, I don't think there's any case law in Washington that says that specifically. I think that the case that the petitioner cited, the McCormick case, is sort of close, but that relies on a completely different condition, and that is do not go into certain areas known where children are known to congregate. So I think that if it came before a court and the state was actually trying to violate Mr. Holmes for a non-willful behavior, I think that you could rely on that case to say, look, the state doesn't need to prove willfulness. However, I think that Mr. Holmes and his attorney would have a perhaps better argument that the definition of contact requires some sort of meaningful communication. So I don't know what the court in Washington would say about that. As a general proposition, willfulness is not something that the state has to prove to prove a violation of sentence, except for in the context of the financial obligations. Okay, thank you. That's helpful. It's the state's position that regardless of whether the condition requires willful contact or non-willful contact, it's not the type of severe restraint that we're concerning ourselves when we're talking about habeas corpus jurisdiction. And I would ask the court to find that the mere prohibition on contact with the victim is not sufficient to render a defendant in custody for purposes of habeas jurisdiction. Thank you. Okay, thank you. Thank you, Ms. Mecklen. Ms. Condola, please proceed. I just want to make two brief points. First, regarding opposing counsel's comments regarding Mr. Holmes' ability to choose to reframe from engaging in conduct, as you said in the case where the lawyer was choosing not to pay a fine. That lawyer was choosing. He was facing contempt proceedings for willful conduct. As counsel herself noted, there is no requirement under Washington law that Mr. Holmes act willfully if he has contact with these individuals, so he cannot make that choice. He does not get to choose to avoid incarceration. He could have incidental contact and could face incarceration. And second, I don't believe that – I want to remind this Court of its precedent in Dowdy Circuit Court of First City where it held that having to attend an alcohol class over the course of several days was sufficient restraint for habeas jurisdiction. This Court does not require incarceration. It doesn't require a sanction. In fact, it requires a restriction on movement. And that is also what the Court said in Williamson v. Gregoire. The inquiry is really on the restriction on movement. It doesn't require a court to impose a sanction on incarceration. There's no restriction on his movement. It's all kind of speculated whether or not he would ever be incarcerated. But the fact that there is no willful requirement means that he is subject to – he's running the risk of incarceration regularly. He's not going from the Seattle Center, Pike's Market, or any other place in the city. But for the fact that he may encounter these individuals – On the theory that he violated that condition when he's walked by someone at Pike's Place or in Seattle Center, that you have the transcript of the government's argument here to take down to the – But the issue is not whether we could defeat the probation violation hearing. It is whether this condition, as it was imposed upon him, is restricted to him sufficiently such that this Court has jurisdiction over his petition. And I would argue to the Court that it has been sufficiently restricted on his movement that this Court does have jurisdiction over his petition. I'm raising my question as related to whether an objective person in Holmes' position would really have a fear or apprehension of a criminal sanction or civil sanction of some kind as a result of a chance encounter. I think, particularly given that he was five blocks within where these protected parties work, he actually has a very reasonable fear that he could have a chance encounter and be incarcerated as a result of that. Okay, thank you. Well, I will thank counsel for appellant and appellee for their very interesting arguments on what I think is a fairly novel issue for us all to ponder. And we will submit – where's that piece? Submit Holmes v. Satterthwaite. Thank you.
judges: Fisher, Gould, Paez